**Tracy Michelle OLIVER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 14–97–00733–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 26, 1999.

---

Kristine C. Woldy, Houston, for appellants.

Julie Klibert, Houston, for appellees.

Panel consists of Chief Justice MURPHY and Justices HUDSON and FOWLER.

## O P I N I O N

J. HARVEY HUDSON, Justice.

Appellant, Tracy Michelle Oliver, was charged by indictment with the offense of assault on a public servant. The indictment contained two enhancement paragraphs for the offenses of injury to a child and possession of a controlled substance.

Appellant entered a plea of not guilty, but after considering the evidence, a jury found her guilty of assault as charged in the indictment. The court subsequently found the enhancement paragraphs to be true and assessed appellant's punishment at confinement for twenty-five years in the Institutional Division of the Texas Department of Criminal Justice. We reverse and remand.

■ In her first point of error, appellant contends the trial court erred in compelling her to be tried in her jail clothes. On Wednesday, June 18, 1997, appellant's counsel advised the trial judge prior to the commencement of voir dire that her client had been unable to secure clothes for the trial. Counsel explained that the case had been scheduled for Monday, and that appellant's family had attempted to leave clothes at the jail on Sunday. However, jail officials allegedly told the family that no clothes would be accepted any sooner than 6:00 p.m. on the evening before trial. Thereafter, the case was carried "day-by-day." On Tuesday evening, counsel advised the court the family again tried to deliver clothes to the jail, but were prevented by "bad storms." Counsel then expressly objected to the prejudicial effect engendered by the jail clothes. The trial judge responded by pointing out that (1) the trial had originally been scheduled for the preceding Friday, (2) the family could have taken clothes to the jail, but did not do so, and (3) the only storms on Tuesday were around 11:00 a.m., not 6:00 p.m. The trial judge then announced the case was 245 days old, and he overruled the objection.

■ The principal purpose of a criminal trial is to discover the truth or falsity of the accusations against the defendant and, if true, to assess a just and proper punishment. Thus, two competing hypotheses are presented to the jury—guilt and innocence. The verity of a hypothesis is confirmed in the natural sciences through an objective analysis of the reliable data. Similarly, a jury's verdict must rest upon rational deductions drawn from reliable evidence. Unfounded presumptions, speculation, bias, and conjecture are contaminants to this intellectual process.

■ Justice is due to both the accused and the accuser. However, in a courtroom where some degree of human error is inevitable, a deviation from justice seems less offensive if it favors the guilty rather than condemning the innocent. Thus, in our accusatorial system of justice, the defendant's hypothesis is presumed unless the State's competing hypothesis is firmly established by the evidence. In other words, the presumption of innocence is an analytical construct designed to properly channel the jury's deliberations and protect the integrity of their verdict. If the defendant is guilty, the truth of this fact must be established by the *evidence*, not the allegations. However, apart from judicial admonishments and a probing voir dire examination, there are few precautions the trial court can take to cleanse the environment of irrational preconceptions.

The chief failing of admonishments is that they are dependent upon the honest introspection of individual jurors and their willingness to candidly reveal their secretly held opinions and beliefs. Moreover, even the most conscientious juror will be unaware of all of his innate predeterminations. However, there is one direct, tangible measure the court may employ to help shield the proceedings from preconceived notions of guilt—to remove or soften the visible trappings of guilt.

■ In ancient Rome, the "criminal usually stood under the *Rostra* in a mean garb, where he was exposed to the scoffs and railleries of the people."[1] The prisoner was forced to mount a defense from this ignominious position and although he might occasionally succeed, the environment was hardly conducive to a thoughtful, dispassionate assessment of the evidence.

1. Alexander Adam, Roman Antiquities 272 ( New        York, George Long 1814).

If the presumption of innocence is to be meaningfully embraced, a defendant must not be presented to the jury in physical restraints,[2] jail clothing[3] or other indicia of guilt. Thus, if an accused asserts his right to not be tried in jail clothes, "it is the duty of the trial court, the accused's attorney, the state's attorney, and the peace officers in control of the accused to offer him an opportunity to wear civilian clothes." *See Randle v. State,* 826 S.W.2d 943, 946 (Tex.Crim.App.1992).

■ The State contends appellant had ample opportunity to obtain civilian clothing; her family simply failed to take the clothing to the jail. A defendant must not be permitted to manipulate or disrupt the course of judicial proceedings by his willful acts or callous neglect. However, the record indicates the family made at least one attempt to deliver civilian clothing to the jail prior to trial. For reasons that are not satisfactorily developed in the record, the jail officials allegedly refused to accept the clothing.

■ Even if the family was inattentive to the task, their indolence, if any, is not directly attributable to appellant. Where the family fails to provide civilian clothing, the burden next falls upon counsel. Here, the record reflects the family allegedly made a second attempt to deliver clothes to the jail the day before trial. There is nothing in the record to suggest counsel was aware the family had failed to deliver the clothes until the morning of trial. Counsel discovered immediately prior to trial that her client was dressed in jail clothes, and she so advised the court.

Moreover, there is nothing in the record to suggest the case had been previously delayed on account of appellant's clothing. The case was carried for several days on a "day-to-day" basis, but there is no intimation this delay was for appellant's convenience or to allow her more time to obtain civilian clothing. The trial judge's desire to promptly dispose of the case is laudable, but we find the court's decision to compel the appellant to proceed to trial in jail clothes constituted error under the facts presented here.

■ The State contends the error was harmless because the venire was carefully admonished by the trial court that they should not be influenced by the sight of appellant's jail clothing. In fact, the State observes that numerous members of the venire were subsequently disqualified for service when they admitted appellant's appearance in jail clothing would adversely affect their consideration of the case. While this is some evidence the harmful effect was ameliorated during voir dire, it also illustrates the pervasively prejudicial impact of jail clothing.

■ There is a point where we "should not be ignorant as judges of what we know as men." *See Watts v. Indiana,* 338 U.S. 49, 52, 69 S.Ct. 1347 (1949). People are judged on their appearance.[4] Thus, on all occasions where character judgments are made, e.g., a job interview, a first date, a political campaign appearance, etc., personal appearance and attire are deemed to be critically important; personal appearance is no less significant in a

---

**2.** The sight of shackles may have a significant effect on the jury's feelings about the defendant. *See Illinois v. Allen,* 397 U.S. 337, 344, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). However, the accused cannot be permitted to disrupt, bully, insult, or otherwise be disrespectful of the trial court proceedings. Accordingly, a contumacious defendant may, as a last resort, be shackled and gagged in the jury's presence. *Id.*

**3.** The defendant's clothing is so likely to be a continuing influence throughout the trial that

it is not unlike placing a jury in the custody of a bailiff who is also a witness for the prosecution. *See Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976). Jail clothing presents an unacceptable risk of impermissible factors coming into play. *Id.*

**4.** Thomas Fuller cleverly noted, "By the husk you may guess at the nut." THOMAS FULLER, M.D., GNOMOLOGIA 1044 (1732). The Bible more soberly affirms, "Man looks at the outward appearance...." 1 *Samuel* 16:7(NIV).

criminal trial.[5] The error presented here impinges upon a substantial right, and we cannot say beyond a reasonable doubt that it did not contribute to the conviction.[6] *See* Tex.R.App. P. 44.2.

Accordingly, we sustain appellant's first point of error. The judgment of the trial court is reversed and the cause is remanded for a new trial.

Chief Justice MURPHY concurs in the result only.

**5.** That the jury heard testimony about appellant's arrest does not render her appearance in jail clothing harmless.

Clearly identifiable prison garb does more than clothe a defendant with suitable raiment—it also clothes him with an unmistakable mark of guilt. Forcing a defendant to appear at trial so dressed not only is demeaning; it reinforces the fact that the defendant has been arrested and projects to the jury the mark of guilt, thus eroding the principle that the defendant is presumed innocent until proven guilty. This subliminal advertising has no place in our system of criminal justice; a defendant is entitled to appear free of this mark of guilt. That the jury will learn of his arrest during the course of the trial does not mitigate the harm occasioned by parading the defendant clothed in a shroud of guilt.
*United States v. Harris*, 703 F.2d 508, 512 (1983).

**6.** "The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).