**Lorenzo POWELL, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–08–00243–CR.

Court of Appeals of Texas,
Beaumont.

Submitted Dec. 28, 2009.

Decided Jan. 20, 2010.

Discretionary Review Refused
April 28, 2010.

Greg Burton, George W. Lang II, State Counsels for Offenders, Huntsville, for appellant.

Melinda Fletcher, Special Prosecution Unit, Amarillo, for state.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

Lorenzo Powell was charged with assaulting a guard at a state prison unit. The jury heard evidence that while alone in the dayroom in administrative segregation,[1] he reached through the bars and cut a correctional officer on the face with a razor or other sharp object. The injuries required sixty-five stitches. The jury convicted Powell of aggravated assault on a public servant and, after hearing evidence of an assault on a guard and of four prior felonies (including aggravated robbery of an elderly person), assessed a punishment of sixty-five years in prison. We affirm the judgment.

### THE EVIDENCE

The correctional officer who was injured testified that he knew appellant on sight and saw appellant reach out and cut him. Powell was the only person in the dayroom. A photograph of the injuries was admitted into evidence. The wound required reconstructive surgery. Another officer also testified he saw Powell attack the officer. The lieutenant who arrived at the scene after the attack told the jury that the injured officer was bleeding profusely, and that appellant refused orders and was eventually gassed in an effort to obtain his cooperation. The officers used "chemical agents" to get appellant into hand restraints. Appellant finally followed orders and discarded his jumper and a razor blade outside of the dayroom bars.

After the State rested, appellant presented three inmate witnesses from the administrative segregation cells. Each witness testified the injuries were caused when the officer fell and hit his head. One of the inmates, Reidic Jackson, testified he would lie for Powell "if there was a reason

---

1. Separated from others and single-housed.

to lie[,]" but he was telling the truth because there was no reason to lie. He was of the opinion that in the administrative segregation cells there was an "ongoing conflict because you have people that have nothing to lose and you have people that would like to enforce rules that aren't appropriate." He testified that he had been convicted of aggravated robbery, possession of a controlled substance, and assault on a public servant. Inmate Brandon Sims testified that he was serving time for aggravated robbery, aggravated sexual assault, and kidnaping. He testified that he "would commit aggravated robbery, but not a sexual assault[,]" and asserted he would not lie for Powell. Sims admitted it did not bother him that a guard was hurt. Inmate Wayne Hodges testified he was currently incarcerated for assault and robbery. When asked how many assaults he had committed, he responded, "I don't keep track." He admitted, "Yes, I assaulted officers before." When asked how many felony convictions he had, he said, "I don't know." He explained, "I can't say" when asked whether he was bothered that the officer was hurt.

On the issue of punishment, the jury heard the officer who had been cut describe the impact of the assault on his life. The jury also heard testimony from another officer from a different prison facility, who had been attacked by Powell. The jury also heard Sims and Hodges testify of a dispute between some of the inmates and some of the guards. Hodges testified Powell was "overall" "a good person" who does not cause problems unless he is provoked. Hodges explained that at least Powell will try to talk, while Hodges admitted he would stick someone if he is "punished to the limit[.]" Sims testified

that Powell is "kind of kindhearted." Sims did not think that aggravated robbery of an elderly person sounded like something Powell would do. When asked whether that sounded like a "kindhearted act," he responded, "[d]epends," and then testified, "I never said robbing somebody would be a kindhearted thing."

The jury received pen packets showing appellant's prior convictions for two counts of robbery, one for aggravated robbery, and one for possession of a controlled substance. Appellant's prior sentences ranged from two years for the possession offense to forty years for aggravated robbery.

After finding the enhancement paragraphs to be true, the jury considered a penalty range from twenty-five to ninety-nine years or life. Powell's counsel asked for the minimum sentence, and the prosecutor asked the jury to assess a life sentence. The jury chose sixty-five years, a mid-range sentence, as the appropriate punishment.

### THE REQUEST FOR A HEARING

In his first issue on appeal, Powell argues the trial court abused its discretion by denying his request for a hearing on his amended motion for new trial.[2] The motion for new trial asserted Powell was deprived of his right to a fair trial under the Fourteenth Amendment of the United States Constitution and article 1, section 19 of the Texas Constitution. Powell contends that the motion and accompanying affidavits asserted facts that are not determinable from the record, and therefore the trial court should have held a hearing.

The purpose of a hearing to consider a motion for new trial is to decide

---

2. The State has abandoned its argument that the amended motion for new trial was un- timely.

whether to retry the case and, in the event the motion is denied, to prepare a record for presenting issues on appeal. *Smith v. State,* 286 S.W.3d 333, 338 (Tex.Crim.App. 2009) (citing *State v. Gonzalez,* 855 S.W.2d 692, 695 (Tex.Crim.App.1993) (plurality opinion)). The opportunity to prepare a record for appellate review makes a hearing on a motion for new trial a critical stage, but a hearing is not an absolute right. *Id.* (citing *Reyes v. State,* 849 S.W.2d 812, 815 (Tex.Crim.App.1993)). No hearing is required when the matters urged in the motion for new trial can be determined from the record. *Reyes,* 849 S.W.2d at 816. Even if a matter is not determinable from the record, a hearing is not required unless the defendant "establishes the existence of 'reasonable grounds' showing that the defendant 'could be entitled to relief.'" *Smith,* 286 S.W.3d at 339 (quoting *Reyes,* 849 S.W.2d at 816). A trial court's denial of a hearing on a motion for new trial is reviewed under an abuse of discretion standard. *Id.*

The material matters raised in Powell's request for a new trial are determinable from the record. After defense counsel announced ready to proceed to trial, the trial court and the prosecutor made the following remarks outside the jury's presence:

> [The Court]: Before we get started, Mr. Powell, I understand there were a few problems this morning as to you giving some people a hard time. I just want to caution you before we get started. Security is not going to be an issue in this courtroom, okay? The shock belt is on you. I have one of the buttons, and the bottom line to it is if you act up for 2 .seconds, I'm going to shock you. I do not want to do that; but I will not for 2 seconds tolerate any actions, any outbursts or any matters along that line. Your feet will be chained to the floor. That curtain is up there to keep any

> juror from seeing the fact that you're restrained. In the event that you choose to let them know that, that's your business; but at no point in time will that create a problem for me.
>
> . . . .
>
> [Prosecutor]: I just want to make it clear for the record that Mr. Powell, although his feet are shackled and he is chained to the floor, there is a curtain in front of the table. The jury cannot see this; and furthermore, the chains do not rattle at all. There is tape around all of the links around the lock. There is no noise involved in case he moves so that there will be no way for the jury to know that he's shackled under the table.

That same morning of trial, the trial court considered Powell's motion in limine. Before the defendant was brought into the courtroom, the trial judge stated as follows:

> I want the record to reflect, too, that Mr. Powell is here. He is back in the holding cell and has just been a nightmare this morning for not only the Court's bailiffs but also for the Institutional Division guards. He has got the shock belt on, and it appears that he is just dead set on creating a problem—going out of his way—to allow Mr. Powell to come in here and conduct himself properly. It's the Court's hope that he is able to do that. But there is no question that security is on the highest of alert and that we're going to do any and everything there is to make sure that Mr. Powell does not become a threat to any of the participants that are in this proceeding.

When the defendant entered the courtroom, the trial judge stated as follows:

> [The Court]: I want the record to reflect that the bailiffs are having to drag the defendant on his back into the court-

room. He is resisting and fighting them the entire way.

[Defendant]: Is there any reason why I can't use the restroom?

[The Court]: We're fixing to bring the jury in, and ... we're going to leave you in shackles. Based on your behavior, I would like for you to put your hands under the table so that the jury doesn't see your hands. I'm going to bring them in here. You do whatever you want to do.

[Defendant]: Can I use the restroom?

[The Court]: This is not a dialogue. This is a directive. I'm going to tell you to put your hands under the table so that you don't compromise the fact that you're in custody.

[Defendant]: I don't care.

[The Court]: If you don't care, that's fine. The jury's going to come in. I don't have time to talk to you. We're ready for the jury.

Defense counsel objected to the shackles and the prejudice resulting therefrom. The trial court responded as follows:

[The Court]: Yes, sir, there is [some danger of prejudice]. And you're here in this courtroom; and as an officer of the Court, you see the conduct that your client is doing in front of everybody in here. Even with all that and these guards and the fact the Court has a shock device, based on that, are you stating in good faith that in the best interest of security in this courtroom, it's wise to take those shackles off of him?

The Court explained that the defendant had already been admonished to put his hands under the table and out of the view of the jury, and the defendant had refused to do that. Trial counsel acknowledged that defendant said he would not keep his hands under the table.

After the testimony of five witnesses, the trial judge announced a morning break in the trial. The record reflects the following:

[The Court]: Let the record reflect that during the break, Mr. Powell ripped his shirt in the holding cell, apparently has used his shirt as toilet paper, again, in an attempt to disrupt the proceedings that are going on.

I also want the record to reflect that prior to bringing the jury in originally this morning that the bailiffs had tried to place a jacket over the handcuffs of Mr. Powell. I instructed Mr. Powell to place his hands under the table. The Court's table has draping all the way around it to where it's totally impossible for any juror to view any shackles whatsoever. Mr. Powell refused to put his hands underneath the table. He also refused to allow the bailiffs to drape a coat over his hands to where the shackles would not be in the plain view of the jury.

And based on that, compared to the safety and all the problems that we've had with Mr. Powell this morning, Mr. Powell will remain in shackles. The Court had thought about giving him an opportunity to come back in here and conduct himself properly; but based on his actions during the break, the Court will make sure that Mr. Powell remains shackled.

When the defendant was brought into the courtroom without his shirt, defense counsel objected. The Court stated as follows:

[The Court]: Let the record reflect that, again, [defendant] is in the courtroom. He refuses to comply and he is becoming more and more hostile, more and more violent, and it has now taken approximately eight guards to get him sat in his chair.

Wrap that jacket around him.

[Defense Counsel]: Judge, the defense would ask the Court to let the defendant be tried with his shirt on so that his tattoos will be covered.

[The Court]: It's my understanding that his shirt now has feces on it.

I'll tell you one last time to be quiet or I'll put you in the holding cell and there's where you're going to remain for the rest of the trial. If you want to voluntarily absence yourself, then hit the road. I'm going to give you an opportunity to sit here. I've already tolerated more of your mess than I planned on.

But the bottom line is if you open your mouth again or if we have one more problem with you, you will spend the remainder of this trial in the holding cell.

. . . .

[Defense Counsel]: There are tattoos that are exposed, and the defense requests the Judge to allow me time for— to go get him another shirt out of the car.

[The Court]: We got a jury waiting. If you choose to take that jacket off of you and throw it off again, that's your problem.

[The Defendant]: I don't want it on me.

[The Court]: You do not want it on you?

[The Defendant]: No. So, get it off of me.

[The Court]: Take that off. Let the record reflect the defendant has now made the decision that he doesn't want to be clothed at all.

We're ready for the jury.

. . .

[The Court]: Let the record reflect the members of the jury are present. The defendant is present.

Ladies and gentlemen, before we get started, I want to make just a slight admonishment to you. The defendant

has chosen not to be robed during this proceeding. I am going to instruct you not to consider that for any purpose. That is not evidence. And the bottom line to it is: You're instructed not to consider that for any purpose whatsoever. Okay?

[The Court]: The witness is yours.

After the State rested its case, and outside the hearing of the jury, the following bench discussion occurred about a defense witness and the general conduct of the trial.

[The Court]: I don't know who this witness is in the holding cell back here, but he is equally as disruptive as Mr. Powell. And I'm going to tell—which I want the record to be clear this is a courtroom. This isn't a zoo. It's not a rec yard. . . . .

The bottom line to it is these inmates are not going to come down here and create the chaos and the disruption that they've created. . . .

But the bottom line is the security issue has gotten completely out of hand. The disruptions have gotten out of hand. . . . [A]s a trial judge, I'm not going to put myself, I'm not going to put you attorneys, I'm not going to put this jury, more importantly, these security officers, in the position of having to fight people to get them into this courtroom to make this trial happen.

. . . .

We certainly want to hear whatever they have to say, but we're not going to engage in physical confrontations any longer to proceed with this trial. The bottom line to it ... I want to make sure that the Court of Appeals fully understands exactly what this trial court is having to go through in an attempt to afford the Constitutional rights to this defendant.

But there are limits and there are boundaries and the bottom line to it is: Security, from this point, will prevail. I will not ask these guys to continue to have physical fights with this defendant or with any other inmates to see what justice is in this case. That's all I have.

During the lunch hour, there was further disturbance by Powell and his witness.

[The Court]: Let the record reflect the jury is not present.

During the lunch hour Reidic Jackson [defendant's witness] was in the female holding cell; and the defendant, Lorenzo Powell, was in the adjoining cell. And the bottom line to it is: There was a tremendous amount of confusion, yelling, screaming, controversy. I ordered the bailiffs to go to the cell and tell them to be quiet. . . .

. . . .

Mr. Powell, the defendant, has been extremely violent and combative throughout the entire lunch hour. These are all things that I . . . personally observed.

. . . .

I do want it clear on the record that the security here in this courtroom has been compromised on numerous occasions today. The Court is in fear for its staff, its bailiffs, State's counsel, the defense counsel, and anybody else that may be present.

. . . .

We are going to take control of this situation and do the best we can do to afford Mr. Powell a fair and impartial jury trial.

In support of his motion for a new trial, appellant submitted two affidavits, one from his attorney and one from the investigator. The investigator's affidavit explained that when the investigator arrived at the court on the morning of trial, he overheard "someone kicking one of the cell doors to the holding cells." A bailiff told the investigator it was Powell, but gave no information as to why Powell was so angry. The investigator indicated Powell told him in the courtroom that the bailiff had refused to give him a drink of water. The affidavits also alleged that while sitting at the defense table during trial, Powell informed his counsel and the investigator that he urgently needed to use the restroom, but the trial court denied counsel's request for a recess. The investigator stated he told Powell that he would have to wait for a recess. Powell requested to use the cup on his counsel's table to relieve himself. After Powell's second bathroom-break request, the trial court allowed a recess ten minutes later. While in the holding tank during the recess, Powell defecated in the holding cell and cleaned himself with his shirt. He then sat through part of the trial in hand restraints and without a shirt. Counsel's affidavit asserted that the jacket the court officers obtained for Powell was draped over his shoulders and not worn with his arms through the sleeves. The affidavit stated Powell "was tried in front of the jury with handcuffs on for the remainder of . . . the trial."

The record reflects facts very similar to those asserted in the affidavits, along with additional facts explaining the court's rulings. A hearing was not required on the motion for new trial because the material matters raised in the motion are determinable from the record. *See Smith,* 286 S.W.3d at 338. We overrule issue one.

## SHACKLES

In issue two, Powell argues the trial court erred by compelling him to be tried while shackled and shirtless (with visible tattoos) in front of the jury. He contends the shackles and lack of a shirt prejudiced

him before the jury and, in effect, deprived him of a fair trial. "The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment." *Estelle v. Williams*, 425 U.S. 501, 503, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976).

■■■ We first address the restraints. In *Illinois v. Allen*, the Supreme Court stated that the "flagrant disregard in the courtroom of elementary standards of proper conduct should not and cannot be tolerated." *Illinois v. Allen*, 397 U.S. 337, 343, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). When confronted with "disruptive, contumacious, stubbornly defiant defendants[,]" trial judges "must be given sufficient discretion to meet the circumstances of each case." *Id.* 397 U.S. at 343, 90 S.Ct. 1057. In a later case, the Supreme Court held that a defendant has a right under the United States Constitution to be free from physical restraints visible to the jury except in special circumstances involving particular concerns, including courtroom security and escape risks, related to the defendant on trial. *Deck v. Missouri*, 544 U.S. 622, 630–31, 125 S.Ct. 2007, 161 L.Ed.2d 953 (2005). This Court has noted that "[s]hackling a defendant at trial is rarely called for, and in that event, the record must detail the grounds for the action." *Grant v. State*, 255 S.W.3d 642, 649 (Tex.App.-Beaumont 2007, no pet.). The decision to use restraints should not be based solely on a general concern for safety or the severity of the charged offense. *Long v. State*, 823 S.W.2d 259, 283 (Tex.Crim.App.1991). Rather, "the trial court has discretion to order restraints if there is a showing of a manifest need or exceptional circumstances, such as when a defendant poses a threat to himself or others." *Yglesias v. State*, 252 S.W.3d 773, 777 (Tex.App.-Houston [14th Dist.] 2008, pet. ref'd). As expressed in *Deck*, "We do not underestimate the need to restrain dangerous defendants to prevent courtroom attacks, or the need to give trial courts latitude in making individualized security determinations." *Deck*, 544 U.S. at 632, 125 S.Ct. 2007. The need for restraints is assessed on a case-by-case basis. *Yglesias*, 252 S.W.3d at 777.

Powell argues the trial court did not set out specific reasons for shackling him. The record does not support that argument. The trial court gave clear, unequivocal reasons, supported by the record, for shackling Powell: specifically, the safety of people in the courtroom. The trial court noted on the record Powell's violent and hostile behavior, disruptiveness, yelling in the holding cell prior to trial and during the recess, kicking the holding cell door, and resistance and fighting while being brought into court. The trial court took measures to prevent the jury from viewing Powell in shackles. Powell chose not to cooperate with those efforts, and stated on the record, "I don't care." *See Estelle*, 425 U.S. at 505 n. 2, 96 S.Ct. 1691 (A defendant should not be allowed to abort a trial by his own acts.); *Franks v. State*, 961 S.W.2d 253, 255 (Tex.App.-Houston [1st Dist.] 1997, pet. ref'd) (Appellant, who tried to initiate unauthorized conversations with jurors during trial recess, invited error and could not thereafter complain of it.). We hold the trial court did not err in the use of restraints under the circumstances in this case.

SHIRTLESS

■■■ Powell's counsel also complained to the trial court that the lack of a shirt made Powell's tattoos visible. The trial court ordered that a jacket be wrapped around Powell. Powell refused to have the jacket on him and asked that it be removed. Appellant argues that the jacket offered to him during trial would not cover all the tattoos, and that having to be pres-

ent at trial without his shirt prejudiced him before the jury and denied him a fair trial. The record does not contain a description of the size or meaning of any tattoos. *See* TEX.R.APP. P. 33.1; *see, e.g., State v. Choice,* —— S.W.3d ——, —— (Tex.App.-Dallas 2008, no pet.) (not yet released for publication). Nevertheless, the merit of appellant's objection to the lack of a shirt does not turn on the visibility or nature of the tattoos. Trial counsel made a reasonable request to allow counsel to retrieve a spare shirt from his car for Powell, and objected to proceeding without the shirt.

 Powell argues that this case is similar to being compelled to appear for trial in jail clothes. A criminal defendant's rights to a fair trial and to be presumed innocent may be violated by compelling him to stand trial in jail clothing.[3] *See Estelle,* 425 U.S. at 512–13, 96 S.Ct. 1691; *Randle v. State,* 826 S.W.2d 943, 945–46 (Tex.Crim.App.1992) (citing U.S. CONST. AMEND. XIV); *Hollis v. State,* 219 S.W.3d 446, 466 (Tex.App.-Austin 2007, no pet.). Unlike physical restraints, compelling a defendant to wear jail clothing "furthers no essential state policy." *Estelle,* 425 U.S. at 505, 96 S.Ct. 1691. A similar analysis applies to the denial here. The basis given by the trial judge for the denial of a recess was that the jury awaited. That it may delay the trial slightly provides insufficient justification for denying the defendant appropriate clothing. *See id.; see Randle,* 826 S.W.2d at 946.

 The record reflects Powell caused the loss of his shirt. Powell made choices, and now argues the alleged consequences of those choices. Usually a defendant may

not invite error and then raise the error as an issue on appeal. *See Franks,* 961 S.W.2d at 255 ("It is a well-settled principle of law that an accused cannot invite error and then complain of it."). Powell decided to be tried for a while without the offered jacket. *See, e.g., Johnson v. State,* 838 S.W.2d 906, 909 (Tex.App.-Corpus Christi 1992, pet. ref'd) (Defendant, who objected to being tried in jail clothes, waived his complaint because he declined trial court's invitation to change into other clothes.); *see also Guillory v. State,* No. 14–03–00723–CR, 2005 WL 43410, at *1 (Tex.App.-Houston [14th Dist.] Jan. 11, 2005, pet. ref'd) (Because appellant affirmatively declined the trial court's repeated offers to obtain other clothes, he cannot be said to have been compelled to trial in jail clothes.). The rule of invited error may preclude an appellate court's review of an issue. *See Franks,* 961 S.W.2d at 255. Given counsel's objection, and considering the trial court's duty under the circumstances, we do not apply the principle to preclude review here, however.

The record does not reflect that trial counsel, following the noon recess, returned to the court with a shirt for his client or renewed the request to obtain one. Trial counsel's affidavit indicates that after the lunch recess and the resumption of trial, "the jacket was put over [Powell's] shoulder and not with his arm through the sleeve."

 It may be that, considering the conduct of the defendant at trial and during recesses, the trial court reasonably concluded defendant sought to appear in court without a shirt—despite the objection of his counsel—for whatever disrup-

---

**3.** When, as here, the accused is on trial for an offense that was allegedly committed when he was incarcerated, however, it is possible no prejudice results from prison clothes, because the jury already knows of his imprisonment.

*See United States ex rel. Stahl v. Henderson,* 472 F.2d 556, 557 (5th Cir.1973). The issue in this case is not any indicia of incarceration but rather the lack of adequate clothing.

tive purpose, appeal to sympathy, or other goal Powell thought that would serve. *See generally Estelle,* 425 U.S. at 508, 96 S.Ct. 1691 (noting tactic of "eliciting sympathy from the jury."). Granting a recess while the jury waited may have been viewed as permitting the intended disruption. Whether dealing with shackles, prison clothes, or the defendant's lack of a shirt during trial, the court nonetheless must consider the judicial process, courtroom decorum and dignity, and the defendant's rights. When considering the use of shackles, the Supreme Court has cautioned:

[J]udges must seek to maintain a judicial process that is a dignified process. The courtroom's formal dignity, which includes the respectful treatment of defendants, reflects the importance of the matter at issue, guilt or innocence, and the gravity with which Americans consider any deprivation of an individual's liberty through criminal punishment.

*Deck,* 544 U.S. at 631, 125 S.Ct. 2007. In explaining part of its holding in *Estelle,* the Supreme Court in *Deck* stated that "making a defendant appear in court in prison garb poses such a threat to the 'fairness of the factfinding process' that it must be justified by an 'essential state policy.'" *Deck,* 544 U.S. at 628, 125 S.Ct. 2007 (quoting *Estelle,* 425 U.S. at 503, 505, 96 S.Ct. 1691). Similarly, compelling or allowing a defendant to be tried shirtless is a practice that takes on constitutional dimensions, furthers no essential state policy, and affronts the "courtroom's formal dignity, which includes the respectful treatment of defendants[.]" *Id.* at 630, 125 S.Ct. 2007; *see generally Oliver v. State,* 999 S.W.2d 596, 599 (Tex.App.-Houston [14th Dist.] 1999, pet. ref'd) ("The trial judge's desire to promptly dispose of the case is laudable, but we find the court's decision to compel the appellant to proceed to trial in jail clothes constituted error

under the facts presented here."). A trial court must seek to maintain a judicial process that is dignified, regardless of the defendant's purpose and despite the disruptive challenge of a contumacious defendant.

In reversing a judgment in a case where a defendant had objected to being forced to trial in jail clothing, the Court of Criminal Appeals held:

[I]f an accused asserts his right to not be placed before the jury while wearing clothing which bears the indicia of incarceration, thus invading his right to a presumption of innocence, it is the duty of the trial court, the accused's attorney, the state's attorney, and the peace officers in control of the accused to offer the accused an opportunity to wear civilian clothes.

*Randle,* 826 S.W.2d at 946. The right to a presumption of innocence was not similarly invaded in this case. Nevertheless, the trial court had the same duty as that articulated in *Randle.* Shackling was unavoidable here. The lack of adequate clothing was not. As in *Randle,* defendant's attorney fulfilled his duty by objecting in a timely fashion. *See id.* We see no sufficient reason for the trial court to deny counsel's request for a recess to replace the shirt.

The question presented then is whether the State has shown beyond a reasonable doubt that the trial court's error did not contribute to the verdict obtained. *See Deck,* 544 U.S. at 635, 125 S.Ct. 2007. Only in rare circumstances would this type of error not impact the trial process. *See Oliver,* 999 S.W.2d at 599–600. The trial judge gave an instruction to the jury to disregard. Appellate courts usually presume the jury follows the trial court's instructions. *Moore v. State,* 882 S.W.2d 844, 847 (Tex.Crim.App.1994). We do not

give the instruction presumptive effect under these circumstances, however, but treat it as a factor in our analysis. *See Arnold v. State,* 786 S.W.2d 295, 311 (Tex. Crim.App.1990). The Supreme Court has considered "the whole record" in concluding "beyond a reasonable doubt" that error was harmless. *See United States v. Hasting,* 461 U.S. 499, 508–09, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

The focus is "upon the process and not on the result." *Harris v. State,* 790 S.W.2d 568, 588 (Tex.Crim.App.1989); *see also Rubio v. State,* 241 S.W.3d 1, 3 (Tex. Crim.App.2007). Nonetheless, overwhelming evidence of guilt is a factor to be considered in our review. *Motilla v. State,* 78 S.W.3d 352, 357 (Tex.Crim.App.2002); *Wesbrook v. State,* 29 S.W.3d 103, 119 (Tex.Crim.App.2000). An appellate court also examines the source of the error, the nature of the error, whether or to what extent it was emphasized by the State, any probable collateral implications, how much weight a juror would probably place upon the error, and whether declaring the error harmless would encourage repetition by the State with impunity. *Harris,* 790 S.W.2d at 587. After isolating the error and its effects, an appellate court should "ask whether a rational trier of fact might have reached a different result if the error and its effects had not resulted." *Id.* at 588.

The trial judge instructed the jury that appellant had chosen "not to be robed." Appellant did not object to that instruction. With that instruction, a reasonable juror would assume that the court was not treating Powell with disrespect, but was allowing Powell's decision to be implemented. If a juror concluded that Powell was being treated as he requested, a rational juror would follow the trial court's instruction to disregard. Choosing to appear without a shirt could reasonably be understood, however, as an effort by Powell to communicate to the jury that he felt he was being treated with disrespect; but if a juror was persuaded by Powell—rejecting the court's instruction that it was Powell's choice—a rational juror would not then also hold that mistreatment against Powell.

The nature of the error in this case is seen in the context of a disruptive defendant attempting to abort a trial; from the record, it appears that all other disruptive acts occurred outside the presence of the jury. The State did not suggest that the defendant should be punished for any in-court behavior. Under the circumstances of this case, we believe a rational juror would do as Powell's counsel suggested in argument and not punish Powell for "sitting here without his shirt on."

The error occurred in the middle of trial, under circumstances created by a contumacious defendant who intended to disrupt the proceedings, and at a time when the trial judge felt a necessity to proceed despite that disruption. Declaring the error harmless under the unique circumstances presented here is not likely to encourage repetition of the error.

Overwhelming evidence is a factor in the analysis. *See Wesbrook,* 29 S.W.3d at 119. The Court of Criminal Appeals in *Harris* stated that when "the nature of the error is such that it could not have affected the jury," "the jury must have relied on overwhelming evidence of guilt in the first place." *Harris,* 790 S.W.2d at 587. That is true in this case. The overwhelming evidence dissipates any effect of the error on the jury's function in determining the facts. *See id.* The offense occurred in administrative segregation in a prison when the defendant was the only one in the dayroom. Despite a record supporting the prosecutor's request for a life sentence, the verdict was in the middle of the

range of possible punishment. On this record, we conclude the State has shown beyond a reasonable doubt that trial court error did not contribute to the jury verdict. *See Deck*, 544 U.S. at 635, 125 S.Ct. 2007. Issue two is overruled.

The judgment is affirmed.

AFFIRMED.