

NUMBER 13-09-353-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

**JOSE CARDENAS AKA JOSE CAMARENA,**             **Appellant,**

**v.**

**THE STATE OF TEXAS,**             **Appellee.**

---

### On appeal from the 214th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Vela**
**Memorandum Opinion by Justice Vela**

A jury convicted appellant, Jose Cardenas a/k/a Jose Camarena, of murder, *see* TEX. PENAL CODE ANN. § 19.02 (Vernon 2003), and aggravated assault. *See id*. § 22.02 (Vernon Supp. 2009). The jury assessed punishment at forty-five years' and twenty years' imprisonment, respectively, plus a $2,500 fine for each offense. The sentences were

ordered to run concurrently. In five issues, appellant contends: (1) the evidence is insufficient to support his convictions; (2) the trial court erred in failing to charge the jury on lesser-included offenses; (3) the trial court erred in failing to disclose juror information; and (4) the trial court violated his right to effective assistance of counsel. We affirm.

## I. FACTUAL BACKGROUND

### A. State's Evidence

On June 19, 2008, Rachel Adame called Eva Ybarra and told her "that there was going to be a fight." After Eva received the call, she, Maria Rosales, and F.T.[1] went to the corner of 10th and Booty Streets in Corpus Christi, Texas. About that time, Misty Torres, V.A.,[2] Maricela "Chata" Ybarra, Mark Pereida, his brother, Michael Pereida, and appellant went to the same location in Misty's vehicle. When Misty's group arrived, a fight erupted, involving six to eight girls.

Jose Riojas and Maria Cortez were present during the fight. Riojas testified that after the fight, three men "pointed the guns at us" and "cock[ed] their guns." He said the three men "started approaching us and then they backed up." He saw "a flash" from one of the guns, and he identified Mark Pereida and appellant as two of the three men who were pointing the guns. Cortez saw her boyfriend, Jose Gomez,[3] get shot by Michael Pereida. She identified Mark Pereida and appellant as being present during the fight and said, "They had guns. They were opening fire, too."

Maria Rosales, who was present during the fight, testified that Michael Pereida fired a "warning shot," and Mark Pereida "started firing randomly." F.T. testified that when

---

[1]F.T. is a child witness.

[2]V.A. is a child witness.

[3]Gomez's autopsy report showed he died from a single gunshot wound to his chest.

2

nobody listened to Michael's warning shot, "they just started going off with their weapons." She stated, "I seen [sic] the gunfire. . . . From both [of them]." She said that Michael Pereida fired five shots from a revolver and that Mark Pereida fired six shots from an "automatic gun."

A.S.[4] testified that after the fight started, he saw "[t]wo dudes," who "pointed [guns] at us." One of these men had a revolver. After hearing gunshots, A.S. felt a bullet hit his leg and said that it went through his leg. J.S.[5] testified that during the fight, "a dude blind sided me. . . ." When J.S. saw the man who blind sided him "going at" A.S., J.S. "stepped forward," and the man, whom J.S. identified as Mark Pereida, pulled out "[a]n automatic" gun and got into Misty's vehicle. J.S. heard "one shot go off, and after that there were several more." Rachel Adame testified that two people inside Misty's vehicle fired the shots out of two of the vehicle's windows.

V.A., who arrived at the scene with Misty Torres, testified that after the fight, everybody got back into Misty's vehicle and that the shooting started "[a]s we're driving away." She stated that all three men inside Misty's vehicle had guns. V.A. said that the man in the front-passenger seat, along with the man sitting behind him, fired out the window. She identified appellant as one of the two men firing out the window. V.A. testified that Misty drove to the freeway, where "[e]verybody got off and ran. . . ." She said "the guys that had" the guns "threw the guns in the grass." According to V.A., three people threw guns into the grass.

Investigators recovered four .25 caliber shell casings from the crime scene and one .25 caliber shell casing from inside Misty's vehicle. The five shell casings were fired from

---

[4]A.S. is a child witness.

[5]J.S. is a child witness.

3

the same .25 caliber automatic weapon. A bullet hole was found in the wall of an apartment near the scene of the shooting. Inside that apartment, an investigator found a .38 caliber bullet fragment, which came from a revolver. No weapons were found, but a .25 caliber bullet was removed from Jose Gomez's body.

**B. Defense Evidence**

Appellant was jointly tried with a co-defendant, Mark Pereida. After the State rested its case-in-chief at the guilt-innocence stage, Pereida called the following witnesses.

Martin Rosales testified that he lived with Ruby Flores, the mother of Mark and Michael Pereida. Rosales stated that on the evening following the shooting, Misty Torres and appellant came to his home and that Misty told him that Michael Pereida "wasn't the shooter."

Mark Pereida testified that prior to the shooting, Misty and his older brother, Michael Pereida, picked him up along with two females and appellant, who had an automatic weapon. Mark testified that while in Misty's vehicle, he asked to be taken to his fiancee's house, but "I was told that I would be dropped off after they had to discuss something with one of their friends." When they arrived at 10th and Booty Streets, everybody got out of the vehicle, and the girls started fighting. Mark testified that he was not involved in the fight and did not have a gun. He said that when "they all rushed at" his brother, Michael, Michael fired a gun. Mark said that when he and the others left the scene in Misty's vehicle, Misty was driving, Michael sat next to her, appellant was sitting behind Michael, the two females sat next to appellant, and he sat in the rear seat. Mark testified that he believed that Michael and appellant fired their guns out the window. Misty drove to Morgan and Crosstown Expressway where the guns were thrown into the grass, and everybody got out except for Mark and Misty.

4

Jessica Amador testified that she and her boyfriend followed Misty's vehicle to where the fight occurred. Amador joined in the fight, and when she heard gunshots, she ran. She did not see any weapons and did not know who was doing the shooting.

Officer Jason Smith testified that J.S. identified appellant "as the man [he] saw out there with the gun[.]" Officer Smith stated that Eva Ybarra and Maria Rosales told him that Misty had a gun at the time of the shooting. He also testified that Mary Cortez told him that she saw only two men with guns at the time of the shooting. He said that the gun that shot A.S. "could have" been a revolver.

## II. DISCUSSION

### A. Sufficiency of the Evidence

In issue one, appellant contends that the evidence is legally and factually insufficient to prove he fired the shot that killed Jose Gomez and that the evidence is factually insufficient to prove he shot A.S. In issue two, he contends that the evidence is legally and factually insufficient to prove that he is liable as a party for Gomez's death or for the aggravated assault on A.S.

#### 1. Standards of Review

"'In assessing the legal sufficiency of the evidence to support a criminal conviction, we consider all the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational juror could have found the essential elements of the crime beyond a reasonable doubt.'" *Roberts v. State*, 273 S.W.3d 322, 326 (Tex. Crim. App. 2008) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). In a factual-sufficiency review, the only question to be answered is: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Grotti v. State*, 273 S.W.3d 273, 283

5

(Tex. Crim. App. 2008). Evidence can be deemed factually insufficient in two ways: (1) "the evidence supporting the conviction is 'too weak' to support the fact finder's verdict"; or (2) "considering conflicting evidence, the fact finder's verdict is 'against the great weight and preponderance of the evidence.'" *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009) (quoting *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006)). When a court of appeals conducts a factual-sufficiency review, it must defer to the jury's findings. *Id*. The court of criminal appeals has "set out three 'basic ground rules' implementing this standard." *Id*. (quoting *Watson*, 204 S.W.3d at 414). First, the appellate court must consider all of the evidence in a neutral light, as opposed to in a light most favorable to the verdict. *Id*. Second, the appellate court "may only find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id*. (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)). Third, the appellate court must explain why the evidence is too weak to support the verdict or why the conflicting evidence greatly weighs against the verdict. *Id*. Although the verdict is afforded less deference during a factual-sufficiency review, an appellate court is not free to "override the verdict simply because it disagrees with it." *Id*.

### 2. Applicable Law

Our review of a legal and factual sufficiency challenge should be examined under the principles of review for a hypothetically correct jury charge. *Grotti*, 273 S.W.3d at 280-81. "'Such a charge [is] one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof, or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried.'" *Villarreal v. State*, 286 S.W.3d 321, 327 (Tex. Crim. App. 2009) (quoting *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)).

A person commits the offense of murder if he or she intentionally or knowingly causes the death of an individual or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. *See* TEX. PENAL CODE ANN. § 19.02(b)(1), (2). A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another or intentionally or knowingly threatens another with imminent bodily injury. *Id.* § 22.01(a)(1), (2). The offense becomes aggravated assault if the person committing the assault uses a deadly weapon during the commission of the offense. *Id.* § 22.02(a)(2).

A person acts intentionally when it is his or her conscious desire to cause the result of his or her conduct. *Id.* § 6.03(a) (Vernon 2003). A person acts knowingly when he or she is aware that his or her conduct is reasonably certain to cause the result. *Id.* § 6.03(b). A person's knowledge and intent may be inferred from the "acts, words, and conduct of the accused." *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003). The elements of party liability under penal code section 7.02(a)(2) are: (1) "acting with intent that the offense be committed," (2) "the defendant solicits, encourages, directs, aids, or attempts to aid" (3) "another person to commit an offense." *Schiffert v. State*, 257 S.W.3d 6, 12 (Tex. App.–Fort Worth 2008, pet. ref'd) (citing TEX. PENAL CODE ANN. § 7.02(a)(2)). "Each party to an offense may be charged with commission of the offense." *Id.* § 7.01(b).

"[W]hile presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant." *Beardsley v. State*,

738 S.W.2d 681, 685 (Tex. Crim. App. 1987). "In determining whether an individual is a party to an offense and bears criminal responsibility, the court may look to events before, during, and after the commission of the offense." *Id*. at 684. "Participation in an enterprise may be inferred from the circumstances and need not be shown by direct evidence." *Id*.

### 3. Analysis of Sufficiency Challenges

A rational jury could have determined the following from the evidence that: (1) appellant accompanied Michael and Mark Pereida and Misty Torres to the fight; (2) appellant brought a gun to the fight; (3) after the fight, three men, including appellant and Mark Pereida, pointed guns at the persons at the scene, cocked their guns, approached them, and then backed up; (4) appellant was one of the shooters inside Misty's vehicle; (5) during the gunfire, A.S. was shot through the leg, and Gomez was shot in the chest; (6) Michael Pereida shot Gomez; (7) the four .25 caliber shell casings recovered from the scene and the .25 caliber shell casing recovered from inside Misty's vehicle were fired from the same automatic weapon; and (8) Gomez was killed by a .25 caliber bullet. In addition, the evidence showed that after the shooting, appellant, along with Misty Torres, Michael Pereida, and Mark Pereida, fled the scene in Misty's vehicle. A fact finder may draw an inference of guilt from the circumstance of flight from the crime scene. *Clayton v. State*, 235 S.W.3d 772, 780 (Tex. Crim. App. 2007). Furthermore, appellant's attempt to conceal his weapon by throwing it into the grass is probative of wrongful conduct and is also a circumstance of guilt. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2007) (stating that "[a]ttempts to conceal incriminating evidence are probative of wrongful conduct and are also circumstances of guilt").

Controverting evidence showed that: (1) no weapons were recovered; (2) no one saw appellant shoot anyone; (3) there was no fingerprint evidence linking appellant to any

8

of the shell casings; and (4) Cortez saw Gomez get shot by Michael Pereida.

Even though the evidence showed that Michael Pereida shot and killed Gomez and that no one saw who shot A.S., the jury apparently chose to believe V.A.'s testimony identifying appellant as one of the shooters who fired at the group of people near the corner of 10th and Booty Streets. Both Gomez and A.S. were part of that group of people. The jury is the exclusive judge of the facts proved and of the weight given to the testimony. TEX. CODE CRIM. PROC. ANN. art. 38.04 (Vernon 1979). Therefore, the jurors were free to accept or reject any or all of the witnesses' testimony. *Davila v. State*, 147 S.W.3d 572, 575 (Tex. App.–Corpus Christi 2004, pet. ref'd) (citing *Alvarado v. State*, 818 S.W.2d 100, 105 (Tex. App.–San Antonio 1991, no pet.)); *see also Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008) (stating that "[t]he jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court who relies on the cold record"). By convicting appellant, the jury obviously chose to accept the testimony offered by the State and reject the testimony favorable to appellant. We must defer to the jury's determination. *See Clayton*, 235 S.W.3d at 778 (stating that "[w]hen the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination."). Even though the witnesses testified to different versions of the events surrounding the shooting of Gomez and A.S., the jury was free to accept one version of the facts and to reject another, or to reject any part of a witness's testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Furthermore, a verdict is not manifestly unjust merely because the jury resolved any conflicting views of the evidence in the State's favor. *See Cain*, 958 S.W.2d at 408-09.

Viewing the evidence in the light most favorable to the verdict, we conclude the evidence is legally sufficient for a rational jury to find appellant guilty as a party to Gomez's murder and to the aggravated assault of A.S. beyond a reasonable doubt. After reviewing all of the evidence in a neutral light, we conclude that the evidence supporting a finding that appellant acted as a party to Gomez's murder and to the aggravated assault of A.S. is not so weak that the fact-finder's determination is clearly wrong and manifestly unjust, or that the verdict is against the great weight and preponderance of the evidence. We hold that the evidence is legally and factually sufficient to support a finding that appellant acted as a party to the murder of Gomez and to the aggravated assault of A.S. Issues one and two are overruled.

## B. Lesser-Included-Offense Instruction

In issue three, appellant contends that the trial court abused its discretion by failing to charge the jury on the lesser-included offenses of manslaughter or deadly conduct. When evaluating charge error, we first determine whether there was error in the charge. *Almanza v. State*, 686 S.W.2d 157, 174 (Tex. Crim. App. 1985) (op. on reh'g); *see Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If error exists, "the next step is to make an evidentiary review . . . as well as a review of any other part of the record as a whole which may illustrate the actual, not just theoretical, harm to the accused." *Almanza*, 686 S.W.2d at 174 (op. on reh'g).

In this case, during the charge conference, defense counsel did not request the trial court to include the lesser-included offenses of manslaughter or deadly conduct in the charge, and he did not object to their absence from the charge. In *Tolbert v. State*, the court of criminal appeals stated "that lesser-included instructions are like defensive issues and that a trial court is not statutorily required to sua sponte instruct the jury on lesser-

10

included offenses because these issues 'frequently depend upon trial strategy and tactics.'" 306 S.W.3d 776, 781 (Tex. Crim. App. 2010); *see Delgado v. State*, 235 S.W.3d 244, 249-50 (Tex. Crim. App. 2007);[6] *Posey v. State*, 966 S.W.2d 57, 62 (Tex. Crim. App. 1998) (stating that a "defensive issue" is not "applicable to the case" unless the defendant "timely requests the issue or objects to the omission of the issue in the jury charge"). We, therefore, hold that the trial court had no duty to sua sponte instruct the jury on the lesser-included offenses of manslaughter or deadly conduct and that a jury instruction on these lesser-included offenses was not applicable to the case absent a request by the defense for their inclusion in the charge. *See Tolbert*, 306 S.W.3d at 782. Accordingly, there was no charge error to which *Almanza's* egregious-harm analysis would apply. *See id.*; *Posey*, 966 S.W.2d at 61. Issue three is overruled.

## C. Access to Juror Information

In issue four, appellant contends that the trial court abused its discretion by failing to allow his counsel to review juror information for jurors 20 and 33. A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or it acts in an arbitrary or capricious manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court does not abuse its discretion if its ruling is at least within the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153-54 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 390-91 (op. on reh'g).

---

[6]In *Delgado v. State,* the court of criminal appeals stated:

> The trial judge has an absolute sua sponte duty to prepare a jury charge that accurately sets out the law applicable to the specific offense charged. But it does not inevitably follow that he has a similar sua sponte duty to instruct the jury on all potential defensive issues, lesser-included offenses, or evidentiary issues. These are issues that frequently depend upon trial strategy and tactics.

235 S.W.3d 244, 249-50 (Tex. Crim. App. 2007) (footnote omitted).

11

## 1. Procedural History

After appellant's trial, his appellate counsel filed a "MOTION FOR DISCLOSURE OF SPECIFIC JURY INFORMATION PURSUANT TO ARTICLE 35.29" (Motion for Disclosure), alleging that: (1) "[t]wo of the jurors who served in this case, Oscar Ortiz, Jr. and Arthur Garcia, may have had felony convictions"[;] and (2) "[p]ersons with the names Oscar Ortiz, Jr. and Arthur Garcia are in the Nueces County Clerk's Office database as having felony convictions."[7] Counsel requested disclosure of "the Texas Driver's License numbers or dates of birth for Oscar Ortiz, Jr. and Arthur Garcia" for purpose of determining whether they are the same persons who had previously been convicted of felony offenses. The motion alleged that "[w]ithout the requested information, . . . counsel will be unable to determine whether the two jurors involved gave incorrect or misleading information to the Court during jury selection." After hearing argument[8] from both sides, the trial court denied the motion for disclosure.

## 2. Analysis

By its terms, article 35.29 of the Texas Code of Criminal Procedure protects juror personal information. *See* TEX. CODE CRIM. PROC. ANN. art. 35.29 (Vernon Supp. 2009).[9]

---

[7]Attached to the motion for disclosure were unsworn, unsigned printouts, purporting to be from the Nueces County District Clerk's website, that showed: (1) two persons named Arthur Garcia (DOB 10/17/1967 and 04/09/1967) who have felony convictions; (2) one person named Oscar Ortiz, Jr., (DOB 05/01/1961), who had a misdemeanor conviction; and (3) one person named Oscar Ortiz (DOB 08/05/1976), who was "released to TDC" for unspecified reasons.

[8]During the hearing on the motion for disclosure, appellant's appellate counsel told the trial court, in relevant part, that "[t]here are two Oscar Ortiz, Jr.'s in the Nueces County District Clerk's files who have a felony conviction. There is also one or more Arthur Garcias who have misdemeanor convictions." She argued that because the juror information sheets had been sealed, she could not determine whether the people who have these convictions are the same people who served on appellant's jury. She further argued that "[w]ithout being able to tell whether these two people are the same people who served on the jury, I can't bring that to the Court's attention." She stated that "I have specific instances that may or may not lead to jury misconduct. But there is no way to determine it without this limited information."

[9]Article 35.29 of the code of criminal procedure provides:

Information collected by the court or by a prosecuting attorney during the jury selection process about a person who serves as a juror, including the juror's home address,

12

When a defendant files a post-trial motion seeking discovery of jurors' personal information, "[h]e is not entitled to such information unless he shows good cause."  *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (citing TEX. CODE CRIM. PROC. ANN. art. 35.29) ("On a showing of good cause, the court shall permit disclosure of the information sought."); *see Cyr v. State*, 308 S.W.3d 19, 29 (Tex. App.–San Antonio 2009, no pet.) (stating that article 35.29 "prohibits personal information about jurors from being disclosed after trial unless good cause is shown").  "What constitutes good cause must be based upon more than a mere possibility that jury misconduct might have occurred; it must have a firm foundation."  *Id*. at 30; *Esparza v. State*, 31 S.W.3d 338, 340 (Tex. App.–San Antonio 2000, no pet.) (stating that "[w]hat constitutes good cause must necessarily be based upon more than a mere possibility that jury misconduct might have occurred").

In *Hooker v. State*, the appellate court stated that article 35.29's good-cause showing "must be based upon sworn testimony or other sufficient supportive evidence in the record."  932 S.W.2d 712, 716 (Tex. App.–Beaumont 1996, no pet.); *see Valle*, 109 S.W.3d at 509 (stating that appellant's allegation "that he needed [the jurors'] personal information to determine whether he should file a motion for new trial . . . is not sufficient to establish good cause").[10]  In this case, the only ground raised in the motion for disclosure as a basis for good cause to disclose juror information involved a possibility of juror misconduct during voir dire based upon the alleged failure of two jurors to disclose

home telephone number, social security number, driver's license number, and other personal information, is confidential and may not be disclosed by the court, the prosecuting attorney, the defense counsel, or any court personnel except on application by a party in the trial or on application by a bona fide member of the news media acting in such capacity to the court in which the person is serving or did serve as a juror.  On a showing of good cause, the court shall permit disclosure of the information sought.

TEX. CODE CRIM. PROC. ANN. art. 35.29 (Vernon Supp. 2009).

[10]*See also Castellano v. State*, No. 04-06-00524-CR, 2007 WL 2935399, at *3 (Tex. App.–San Antonio 2007, no pet.) (holding that defendant had "reason to believe" juror misconduct had occurred was not sufficient to show good cause).

their criminal history. However, "good cause must be based upon more than a mere possibility that jury misconduct might have occurred; it must have a firm foundation." *Cyr*, 308 S.W.3d at 30; *Esparza*, 31 S.W.3d at 340.

We find, therefore, that appellant did not meet his burden of showing good cause to the trial court so as to be entitled to the juror information sought. We hold that the trial court did not abuse its discretion by denying the motion for disclosure. Issue four is overruled.

### D. Right to Ineffective Assistance of Counsel

In issue five, appellant contends that the trial court's denial of counsel's request for the jury information violated his right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. *See* U.S. CONST. amend. VI.

#### 1. Standard of Review

*Strickland v. Washington* defines the components required to show ineffective assistance of counsel. 466 U.S. 668, 687 (1984). The two required components are a performance component and a prejudice component. *Id*. First, the defendant must show that counsel's performance was deficient, which requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment. *Perez v. State*, 310 S.W.3d 890, 892-93 (Tex. Crim. App. 2010). To satisfy this prong of the analysis, the defendant "must show that counsel's representation fell below an objective standard of reasonableness" based upon "prevailing professional norms." *Strickland*, 466 U.S. at 688. For this performance inquiry, we consider all the circumstances with "a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance." *Id*. at 688-89.

14

Second, the defendant must show that counsel's deficient performance prejudiced the defense. *Perez*, 310 S.W.3d at 893. This requires the defendant to show that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. (citing *Strickland*, 466 U.S. at 687). To satisfy this element, the "'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id*. (quoting *Strickland*, 466 U.S. at 694). The defendant has the burden of proving ineffectiveness by a preponderance of the evidence. *Id*. (citing *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005)).

The right to assistance of counsel applies to all "critical stages" of the criminal proceeding, not just the actual trial. *Hidalgo v. State*, 983 S.W.2d 746, 752 (Tex. Crim. App. 1999). The opportunity to prepare a record for appellate review makes a hearing on a motion for new trial a critical stage. *Powell v. State*, 304 S.W.3d 630, 634 (Tex. App.–Beaumont 2010, pet. ref'd).

### 2. Analysis

Appellant's counsel timely filed a motion for new trial, alleging, in part, that "[a]ppellate counsel has not been allowed to view the jury information sheets used by trial counsel during jury selection." Following a hearing, the trial court denied the motion for new trial.

Appellant argues that even though his appellate counsel was present during the hearing on the motion for new trial, counsel was prevented from effectively assisting him on the motion for new trial because the trial court had previously denied counsel's request for the jury information. Appellant further argues that the trial court's refusal to allow counsel access to the juror information caused him prejudice.

15

In *United States v. Cronic*, the Supreme Court stated that "a trial is unfair if the accused is denied counsel at a critical stage of his trial." 466 U.S. 648, 659 (1984).[11] Under certain circumstances, prejudice to the defendant is presumed. "Circumstances of that magnitude may be present on some occasions when although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial." *Id.* at 659-60; *see Batiste v. State*, 888 S.W.2d 9, 14 (Tex. Crim. App. 1994) (stating that the *Strickland* Court "acknowledged that with some varieties of Sixth Amendment violations, such as the actual or constructive denial of counsel altogether at a critical stage of the criminal proceeding, . . . prejudice is presumed").

In *Valle*, the defendant argued that he was denied his right to effective assistance of counsel when the trial court denied his motion to "unseal the jury list." 109 S.W.3d at 509. In overruling the argument, the *Valle* court noted that the defendant's "motion appears to have the sole purpose of discovering the jurors' personal information," which "[h]e is not entitled to . . . unless he shows good cause" under article 35.29 of the code of criminal procedure. *Id.* Like the situation in *Valle*, the sole purpose of appellant's motion for disclosure was to discover the jurors' personal information. Following a hearing, the trial court denied the motion. We find that the trial court's denial of counsel's request for juror information did not result in either an actual or constructive denial of effective counsel for the proceeding on the motion for new trial. *See id.* Thus, there is no presumption of prejudice that appellant was denied the right to effective assistance of counsel.

---

[11]In *United States v. Cronic*, the Court stated in a footnote that "[t]he [United States Supreme] Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." 466 U.S. 648, 660 n.25 (1984) (collecting cases).

Because there is no presumption of prejudice, the dispositive question is whether appellant was prejudiced by the circumstances surrounding his representation. *See Cronic*, 466 U.S. at 662. Appellant does not allege he was denied counsel at any other stage in the case against him or allege his counsel failed to effectively represent him by acting as the State's adversary. *See id*. at 656. We hold that appellant was not prejudiced by the circumstances surrounding his representation. Issue five is overruled.

### III. CONCLUSION

We affirm the trial court's judgment of conviction for both offenses.


ROSE VELA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.

17